ON REHEARING
Initially we affirmed the judgment of the Circuit Court without opinion.
The original brief on behalf of the defendant was filed by Attorney Demetrius C. Newton, who was retained to represent the defendant following his trial. On December 3, 1980, the defendant's appointed trial attorney, Donald R. Hamlin, was granted leave to withdraw as the Attorney of Record for the Defendant in light of Mr. Newton's retention.
On application for rehearing defendant's trial counsel, after having withdrawn from his representation of the defendant, now alleges that the defendant and his family have retained him "to undertake any and all further proceedings that may be available to the Appellant." In a supplemental brief on rehearing, defendant's new appellate counsel argues two issues.
 I
The record shows that the defendant was both arraigned and tried on the same day. The record does not show when counsel (Hamlin) was appointed to represent the defendant at trial. Therefore, the contention that the appointment of counsel on the day of the defendant's trial converted the defendant's right to effective assistance of counsel into a sham and violated his constitutional rights is not supported by the record. The "case action summary" sheets attached by the defendant to his supplemental brief on rehearing are not part of the record and cannot be considered by this Court. Tyus v.State, 347 So.2d 1377 (Ala.Cr.App.), cert. denied,347 So.2d 1384 (Ala. 1977). There has been no motion to correct or modify the record under Rule 10 (f) A.R.A.P.
This issue is raised for the first time on application for rehearing. At trial there was no request for a continuance. Nothing in the record reflects that the defendant ever presented this issue in any form to the trial court. Review on appeal is limited to the consideration of questions properly *Page 145 
raised in the trial court. Harris v. State, 347 So.2d 1363
(Ala.Cr.App.), cert. denied, 347 So.2d 1368 (Ala. 1977). Here the question was never even presented. Consequently, this Court has nothing to review on this issue.
 II
The second issue is:
 "Did the trial Court abuse its discretion in not suspending the trial of the Appellant when ample evidence was introduced at trial through the testimony of witnesses to put the trial Judge on notice that the accused was possibly insane at the time the crime was committed or possibly unable to aid in his own defense at trial?" (Appellant's Supplemental Brief on Rehearing)
This issue was also argued by the defendant's original appellate counsel.
At trial, defendant's counsel did not allege or argue that the defendant was incompetent to stand trial or could not aid in his own defense. The issue of the defendant's sanity at the time of the crime was presented by a plea of not guilty by reason of insanity.
Our review of the record does not reveal "ample evidence" of the defendant's incompetency. Nettie Henderson, the defendant's sister, testified that the defendant had been admitted to a mental institution on "more than a dozen" occasions and that he had only been out of a mental institution about one month before the crime occurred.
Sara Bell, the Chief Clerk of the Probate Office, testified that the defendant "had been sent to the VA Hospital from our office numerous times." Three commitment hearings for the defendant had been held since 1976 and the defendant was actually committed for "evaluation and treatment" on April 8, 1976, and on December 13, 1979. With regard to this last commitment, the defendant was released with the following comment:
 "It is the opinion of the professional staff of this medical center (Veterans' Administration) that Mr. Douglas H. Evans, a veteran committed to this facility by your Court on December 13, 1979, has recovered to the extent that he no longer poses a real threat of substantial harm to himself or to others, and has been discharged from this medical center effective this date (September 19, 1980)."
Dr. Milton G. Norrell, Jr. testified as a defense witness that the defendant "has had mental problems" going back "for years and years and years." Although Dr. Norrell testified that he could not testify to the defendant's mental condition at the time of the crime, the most favorable testimony he gave that could have been used by the jury as a basis for insanity was:
 "This man has been in and out of mental hospitals for many, many times. I don't know just how many times; but it is my impression that it has been many times. He has been wild . . . perhaps it has nothing to do with this case, and maybe I shouldn't mention this . . . He has been brought to the office by his father, who couldn't control him. On a previous occasion, he shot a brother of his. He has had problems. As to that interfering with him knowing right from wrong, that is a problem that is very hard to say. I don't know of this idea of people who are mentally deranged not knowing right from wrong. I know there are some other problems involved in it."
The defendant testified in his own behalf and stated:
 "Since 1970, when I come out of service, I've had emotional problems. You have plead me not guilty by reason of insanity, and I wish to withdraw that plea. I have had emotional problems; but to go so far as to say I'm insane, I wouldn't say that. I have gone to the Veterans Hospital since 1970."
Although the trial judge instructed the jury on the defense of insanity, our review of the record convinces us that there was insufficient evidence to show that at the time the crime was committed the defendant was legally insane. See Herbert v.State, 357 So.2d 683 (Ala.Cr.App.), cert. denied, 357 So.2d 690
(Ala. 1978).
Although the issue of the defendant's competency to stand trial was raised in a motion for a new trial, the record does *Page 146 
not show whether that motion was argued or whether any testimony or evidence was presented in support of the motion. The mere fact that an accused had been recently released from a mental institution before the commission of the crime charged and had a history of civil commitments to hospitals for mental and psychological reasons does not automatically indicate that the accused must be incompetent to stand trial. Under the circumstances presented by this case we find no evidence to support the contention that the trial judge should have taken steps to insure a reasonable and legal determination of the defendant's competency to stand trial. We find no evidence of facts which were present before the trial judge which would have created a reasonable and bona fide doubt as to the mental condition of the defendant to stand trial. Atwell v. State,354 So.2d 30 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 39 (Ala. 1978).
The issues and arguments presented by the defendant in his supplemental brief on application for rehearing lack factual merit supported by the record. We have searched the record for error and found none. The judgment of the Circuit Court is due to be affirmed and the application for rehearing is overruled.
AFFIRMED; APPLICATION FOR REHEARING OVERRULED.
All Judges concur.