Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
IN RE REQUEST OF GOVERNOR WILLIAM J. JANKLOW
FOR AN ADVISORY OPINION CONCERNING THE INTERPRETATION
OF SOUTH DAKOTA CONSTITUTION ARTICLE IV, SECTION 4
South Dakota Supreme Court
ORIGINAL PROCEEDING
#20920
Request Received February 22, 1999; Opinion File Feb 25, 1999
TO HIS EXCELLENCY, WILLIAM J. JANKLOW, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA
[Â¶1] Pursuant to the authority vested in the Governor under Article V, Â§5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court on an important question of law concerning Article IV, Â§4 of the constitution and the computation of time for the Governor to act to either sign a bill or fail to veto a bill. We believe this request constitutes a solemn occasion in which we should provide an advisory opinion, In re Janklow, 530 NW2d 367, 369 (SD 1995), and that the matter has a degree of urgency as the state legislature is currently in session.
[Â¶2] Article IV, Â§4 of the South Dakota Constitution provides in part that:


Whenever the Legislature is in session, any bill presented to the Governor for signature shall become law when the Governor signs the bill or fails to veto the bill within five days of presentation.(fn1) 
Your specific question regarding interpretation of this provision is:


Does the phrase 'within five days of presentation' as found in Article IV, Â§4, mean five consecutive twenty-four hour periods starting the minute my office receives the enrolled bill or the calculation of time found at SDCL 15-6-6(a) or some other combination of days or hours?
[Â¶3]This question is one of first impression in this state; however, similar issues have been addressed in other jurisdictions. See Annotation, Computation of time allowed for approval or disapproval of bill by governor, 54 ALR 339 (1928). The general consensus of the jurisdictions having addressed the question is that, absent express provision to the contrary, the days are counted as calendar days of twenty-four hours each. Redmond v. Ray, 268 NW2d 849, 854 (Iowa 1978); In re Opinion of the Justices, 42 So2d 27, 29 (Ala 1949); McAlester v. Oklahoma Tax Commission, 50 P2d 647, 649 (Okla 1935). The leading case in support of this rule is Okanogan Indian Tribes v. United States, 279 US 655, 49 SCt 463, 73 LEd 894 (1929), commonly referred to as "The Pocket Veto Case." Therein, the United States Supreme Court, interpreting a Constitutional provision similar to the one at issue here, declined to adopt counsel's suggestion to construe "days" as days the legislature is in session rather than "calendar days." The Court stated:

The words used in the Constitution are to be taken in their natural and obvious sense, and are to be given the meaning they have in common use unless there are very strong reasons to the contrary. The word 'days,' when not qualified, means in ordinary and common usage calendar days. This is obviously the meaning in which it is used in the constitutional provision, and is emphasized by 'Sundays' are excepted. There is nothing whatever to justify changing this meaning by inserting the word 'legislative' as a qualifying adjective.
279 US at 679, 49 SCt at 466, 73 LEd at 898 (internal citations omitted).
[Â¶4] In computing the five-day period, the day of presentment, regardless of time of day, is universally excluded from computation and the last day of the time period is included. Advisory Opinion to the Governor, 131 So2d 196, 197 (Fla 1961); State ex rel. Hebert v. Hall, 308 SW2d 828, 829 (Ark 1958); McAlester, 50 P2d at 649; Lewis v. Cozine, 29 SW2d 34, 36 (Ky 1930). "A 'day,' in this sense, begins at 12 o'clock midnight, and extends through 24 hours to the next 12 o'clock midnight." State ex rel. State Pharmaceutical Ass'n v. Michel, 27 So 565, 567 (La 1900); Black's Law Dictionary 396 (6th ed 1990). Although most states' constitutional provisions expressly exclude Sundays, where the question was raised as to legal holidays, courts have declined to exclude holidays, concluding their constitutions should not be expanded beyond what the plain language provides. State ex rel. Putnam v. Holm, 215 NW 200, 202 (Minn 1927).
[Â¶5] When interpreting a constitutional provision, we are guided by the following rules of construction:


First and foremost, the object of construing a constitution is to give effect to the intent of the framers of the organic law and of the people adopting it. Schomer v. Scott, 65 SD 353, 274 NW 556, 559 (1937); State v. Jorgenson, 81 SD 447, 136 NW2d 870, 875 (1965). The Supreme Court has the right to construe a constitutional provision in accordance with what it perceives to be its plain meaning. State v. Neville, 346 NW2d 425, 428 (SD 1984). When words in a constitutional provision are clear and unambiguous, they are to be given their natural, usual meaning and are to be understood in the sense in which they are popularly employed. Kneip v. Herseth, 87 SD 642, 214 NW2d 93, 102 (1974). If the meaning of a term is unclear, the Court may look to the intent of the drafting body. Cummings v. Mickelson, 495 NW2d 493, 499 (SD 1993).
Poppen v. Walker, 520 NW2d 238, 242 (SD 1994).
[Â¶6] Article IV, Â§4 was amended in 1972. The amendment is instructive and directly relates to the issue before us as it, inter alia, extended the time allowed for vetoing a bill from three days (Sundays excepted) to five days whenever the Legislature is in session and extended the time period from ten to fifteen days after the Legislature has recessed or adjourned. The drafters of the amendment struck the Sunday exception entirely but elected not to modify the word "days" with "legislative." The electors of this state approved the amendment on November 7, 1972. Our duty is to construe the amendment giving effect to the intent of the drafters and the people adopting it. Id.; see Opinion of the Justices, 673 A2d 1291, 1297 (Me 1996) ("In construing the Constitution, we seek the meaning that the words would convey to an intelligent, careful voter.").
[Â¶7] We also construe terms in a constitutional provision in pari materia. "That rule of construction supposes that all enactments are intended to be harmonious in their several provisions." Poppen, 520 NW2d at 247 (citing Sales Tax Liability of Valley Queen Cheese, 387 NW2d 39, 41 (SD 1986)). Applying this rule of construction, we note that Article III, Â§6, setting forth the number of days in a session of the Legislature, refers specifically to "legislative days." See generally 1963-64 Report of Attorney General at 6 (concluding the word "legislative" in Article III, Â§6 was surplusage because otherwise the phrase "excluding Sundays, holidays and legislative recess" in the provision would not be necessary). Again, the drafters of the amendment to Article IV, Â§4 could have added the word "legislative" to modify "days" if that was their intent or they could have expressly excluded any other day. "The framers of the Constitution use words in their natural sense and fully intend what they say." Kneip, 87 SD 642, 214 NW2d at 102 (citing Schomer v. Scott, 65 SD 353, 274 NW 556 (1937)). The constitutional provision does not limit its provisions to "legislative days" or expressly exclude any days, and not being so limited, the language used should be construed to mean calendar days.
[Â¶8] We conclude that the five-day time period provided in Article IV, Â§4 of the South Dakota Constitution means five calendar days, and does not provide for the exclusion of Sundays or legal holidays from the computation of this time period. We further conclude, and join the jurisdictions holding with the general rule, that the day of presentment is to be excluded from computation while the last day is to be included. Thus, the running of the five days begins at 12:01 a.m. on the day following the day of presentment and concludes at midnight of the fifth day.(fn2) 
[Â¶9] Respectfully submitted this 25th day of February, 1999.


CHIEF JUSTICE ROBERT A. MILLER
JUSTICE RICHARD W. SABERS
JUSTICE ROBERT A. AMUNDSON
JUSTICE JOHN K. KONENKAMP
JUSTICE DAVID GILBERTSON
Footnotes
1.  In its entirety, this section provides as follows:


Whenever the Legislature is in session, any bill presented to the Governor for signature shall become law when the Governor signs the bill or fails to veto the bill within five days of presentation. A vetoed bill shall be returned by the Governor to the Legislature together with his objections within five days of presentation if the Legislature is in session or upon the reconvening of the Legislature from a recess. Any vetoed bill shall be reconsidered by the Legislature and, if two-thirds of all members of each house shall pass the bill, it shall become law.


Whenever a bill has been presented to the Governor and the Legislature has adjourned or recessed within five days from presentation, the bill shall become law when the Governor signs the bill or fails to veto it within fifteen days after such adjournment or recess.
The Governor may strike any items of any bill passed by the Legislature making appropriations. The procedure for reconsidering items struck by the Governor shall be the same as is prescribed for the passage of bills over the executive veto. All items not struck shall become law as provided herein.
Bills with errors in style or form may be returned to the Legislature by the Governor with specific recommendations for change. Bills returned shall be treated in the same manner as vetoed bills except that specific recommendations for change as to style or form may be approved by a majority vote of all the members of each house. If the Governor certifies that the bill conforms with his specific recommendations, the bill shall become law. If the Governor fails to certify the bill, it shall be returned to the Legislature as a vetoed bill. 
2.  The calculation of time provided by SDCL 15-6-6(a) pertaining to rules of procedure in circuit courts is not applicable to the calculation of time provided by constitutional provision. The statute expressly provides it applies to computing periods of time allowed by SDCL ch 15-6, by court order, or any applicable statute. Procedural statutes are to be strictly construed, Sudbeck v. Dale Electronics, Inc., 519 NW2d 63, 67 (SD 1994), and will not be read to apply where not expressly so provided. See also Opinion of the Justices, 229 NE2d 715, 717 (Mass 1967) ("The time allotted to [the Governor] by the Constitution for the performance of that weighty duty cannot be abbreviated or lengthened by the legislative department of government."); 82 CJS Statutes Â§49 (1953) (constitutional provisions limiting the time within which the chief executive must act regarding approval or veto of a bill are mandatory and may not be changed by the legislature). 
Appendix


20920
IN THE SUPREME COURT 
STATE OF SOUTH DAKOTA 


SUPREME COURT
STATE OF SOUTH DAKOTA
FILED
FEB 22, 1999
Dorothy A. Smith
Clerk
IN THE MATTER OF
INTERPRETATION OF THE
DAKOTA CONSTITUTION,
ARTICLE IV, SECT10N 4 

REQUEST OF
SOUTH WILLIAM J. JANKLOW
GOVERNOR OF SOUTH DAKOTA
FOR AN ADVISORY OPINION
TO: THE SOUTH DAKOTA SUPREME COURT:
COMES NOW, William J. Janklow, Governor of the State of South Dakota, and pursuant to the authority vested in the Governor under Article V, Â§ 5 of the South Dakota Constitution, I hereby request an advisory opinion of the Supreme Court upon the following important question of law which involves the exercise of the Governor's executive power and this solemn occasion:


Article IV, Â§ 4 of the South Dakota Constitution provides the Governor with the Constitutional directions for approval or veto of legislation. Specifically, the Constitution provides that the Governor must take some action, either sign, veto, or style and form veto "within five days of presentation". (fn1) 
The phrase "within five days of presentation" is open to interpretation and has substantial implications for the orderly process of making law. For example, I have listed questions raised by the different possible interpretations of "within five days of presentation."


(1) Does it mean action on a bill must be completed within five (5) consecutive twentyfour hour periods or one hundred twenty (120) hours to the minute;
(2) Does the day of receipt count as one of the days when it is only a partial day;
(3) Do the five days include Saturday and Sunday?
(4) Do the five days include state or national holidays such as the Martin Luther King Day or Presidents Day holidays, both of which fall during legislative session each year;
(5) Do the five days mean only counting legislative days, specifically does it mean counting as one day each day the legislature convenes?
(6) On the last day, what would be the deadline for delivery? The possibilities include 



(a) delivery by 5:00 p.m.; (b) delivery before adjournment of the respective houses of the Legislature; (c) delivery no later than midnight.
Each bill delivered to this office for the Governor's signature is subjected to a review process that goes far beyond simple proofreading. My office and the executive branch agencies spend a great deal time on this review process that includes but is not limited to the following:


(1) checking for possible conflicts with the Constitution and other law;
(2) checking that correct citation of references to other sections of law both state and federal is used;
(3) checking for possible problems in implementation or conflicts with existing law or programs;
(4) ascertaining whether the bill really does what the sponsors claim (5) common sense; (6) readability; (7) style and form for grammar; (8) spelling; (9) extra or missing words.
My predecessors and I interpret the phrase "within five days of presentation" as requiring executive action on legislation within one hundred twenty hours, five consecutive twenty four hour periods, from the hour and minute of presentation. The only reason I do it that way is my predecessors did it that way.
This creates problems in the practical application of the Constitutional provision because five consecutive twenty-four hour periods includes weekends and holidays and is longer than any regular work week. For example, a bill delivered at 9:00 a.m. on a Monday would be due, signed or vetoed, in the Secretary of State's office Saturday at 9:00 a.m. A bill delivered to this office on Tuesday at 1:00 p.m. would be due the following Sunday at 1:00 p.m. This year, bills were delivered to my office for signing on Wednesday before the President's Day three-day weekend. All those bills were due on Monday, the state holiday. The result was effectively only two working days to complete the comprehensive review of those bills. Given the depth of the review given each piece of legislation, the interruption of weekends and holidays severely inhibits this review process. I cannot think of any benefit to the people of South Dakota by a truncated or rushed review of legislative acts waiting to be signed into law.
The South Dakota statute that provides guidance for determining time periods is found in South Dakota's rules of civil procedure in the circuit courts, SDCL Â§ 15 -6-6(a) which provides as follows:


In computing any period of time prescribed or allowed by this chapter, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday. When the period of time prescribed or allowed is less than seven days intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. (Underlining added for emphasis)
Beyond the rule stated at SDCL 15-6-6(a) there are other possible interpretations of the phrase "within five days of presentation." The constitutional reference to days may refer to days the Legislature convenes. If a day means a day and not a twenty four-hour period, the day a bill is delivered may not count toward the five days because it is only a fraction of a day. The opposite of that example would be on the last day when a bill is due for action, the action could occur anytime that day up to midnight. The Uniform Statute and Rule Construction Act rule is, "If the last day of the period is a Saturday, Sunday or legal holiday, the period ends on the next day that is not a Saturday, Sunday or legal holiday. (USRCA Â§ 7(6))" See, 74 Am Jur 2d Â§ 19, 1996 pocket supplement at page 125.
This is an issue of first impression in South Dakota. Given the legal questions raised and the substantial consequences of an improper interpretation, I am hereby requesting your opinion as to the time allowed for signing bills or making vetoes. Specifically, I am requesting the Court to issue an advisory opinion on the following question of law interpreting the State Constitution:
Does the phrase "within five days of presentation" as found in Article IV, Â§ 4, mean five consecutive twenty four hour periods starting the minute my office receives the enrolled bill or the calculation of time found at SDCL 15-6-6(a) or some other combination of days or hours?
When the Governor fails or refuses to sign or veto a bill within five days of presentation, the bill goes into effect without his signature. Any misunderstanding about how to calculate the time for approving or vetoing legislation could result in a bill becoming law without the Governor's signature. I have dealt with this problem for many years. A clear understanding of the "within five days of presentation" clause of Article IV, Â§ 4 carries great weight for me, future Governors, and legislatures.
Your answer to this most important question of law that involves the exercise of the executive power of the Office of Governor will assist me in carrying out my duties as Governor on the approval or veto of a legislative action.
I respectfully request the Court render an expedited opinion.
Dated at Pierre, South Dakota, this 22 day of February, 1999.
Respectfully submitted,
William J. Janklow
Governor
State of South Dakota
Footnote
1 . The full text of South Dakota Constitution Article 4, Â§ 4. Veto power, follows:


Whenever the Legislature is in session, any bill presented to the Governor for signature shall become law when the Governor signs the bill or fails to veto the bill within five days of presentation. A vetoed bill shall be returned by the Governor to the Legislature together with his objections within five days of presentation if the Legislature is in session or upon the reconvening of the Legislature from a recess. Any vetoed bill shall be reconsidered by the Legislature and, if two-thirds of all members of each house shall pass the bill, it shall become law.
Whenever a bill has been presented to the Governor and the Legislature has adjourned or recessed within five days from presentation, the bill shall become law when the Governor signs the bill or fails to veto it within fifteen days after such adjournment or recess.
The Governor may strike any items of any bill passed by the Legislature making appropriations. The procedure for reconsidering items struck by the Governor shall be the same as is prescribed for the passage of bills over the executive veto. All items not struck shall become law as provided herein.
Bills with errors in style or form may be returned to the Legislature by the Governor with specific recommendations for change. Bills returned shall be treated in the same manner as vetoed bills except that specific recommendations for change as to style or form may be approved by a majority vote of all the members of each house. If the Governor certifies that the bill conforms with his specific recommendations, the bill shall become law. If the Governor fails to certify the bill, it shall be returned to the Legislature as a vetoed bill. (Underlining added for emphasis)